# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

CARL WILLIE OLIVER,

                                Plaintiff,

            v.

U.S. DEPARTMENT OF THE ARMY,
   ARMY  REVIEW  BOARDS  AGENCY,
and FRANCINE BLACKMON,

                                Defendants.

Civ. No 14-04114 (FLW/DEA)
OPINION

     *Pro se* Plaintiff Carl Willie Oliver ("Plaintiff"), a retired Army veteran, brings suit against the Department of the Army, the Army Review Boards Agency ("ARBA") and Francine Blackmon (collectively, "Defendants").  Plaintiff alleges that he was "not fairly retired from the Army" and "did not receive any awards towards [his] retirement" in compensation for scrap metal left in his body or his PTSD. Compl. at 1. He requests that this Court "have ARBA look into his case." Id.  Presently before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, or, in the alternative, motion for summary judgment.

     For the reasons set forth below, Defendants' motion to dismiss for lack of subject-matter jurisdiction is granted in part, as to any claims by Plaintiff (1) under the Tucker Act or (2) that Defendants did not evaluate his shrapnel injuries, and denied in part, as to any claims by Plaintiff (1) under the Little Tucker Act and (2) for judicial review under the Administrative Procedure Act for the injuries that Defendants did evaluate. Further, Defendants' motion to dismiss for failure to state a claim is granted in part, as to Plaintiff's request for review of the Army Physical Evaluation Board's determination, and denied in part, as to any claim by Plaintiff (1) under the

Littler Tucker Act and (2) for APA review of the Army Physical Disability Review Board ("PDBR") decision. Finally, Defendants' motion for summary judgment on the claims that survive dismissal is granted.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from both the Administrative Record ("A.R.") attached to the Government's motion and Plaintiff's Complaint.[1]  Plaintiff is a former member of the New Jersey Army National Guard.  A.R. 330.[2]  While Plaintiff was deployed in Iraq, rocket-propelled grenades struck Plaintiff's vehicle twice, in May 2004 and June 2004.  A.R. 186.  At the scene of the second grenade strike, an improvised explosive device exploded, injuring Plaintiff.  A.R. 189, 273.  An Army Physical Evaluation Board ("PEB") evaluated Plaintiff, finding that Plaintiff was unfit for continued service based on the injuries he sustained from the attacks and recommended a combined rating of 10%.[3]  Pl's Compl. at 3.  The Army Medical Evaluation Board ("MEB") forwarded the following conditions to the PEB as "medically unacceptable": (1) traumatic brain injury ("TBI"), (2) post-traumatic headaches, and (3) incomplete nerve palsy.

---

[1] When deciding a motion to dismiss under 12(b)(1) or 12(b)(6), the Court may consider allegations in the complaint, exhibits attached, and matters of public record. Reginella Constr. Co. v. Travelers Cas. & Sur. Co. of Am., 568 F. App'x 174, 177 n.5 (3d Cir. 2014). It may also consider an undisputedly authentic document that the defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based upon that document. Id.  A motion for summary judgment brought under the Administrative Procedure Act is restricted to the administrative record.  Buckingham Twp v. Wykle, 157 F. Supp. 2d 457, 462 (E.D. Pa. 2001). Here, the Administrative Record is an indisputably authentic document upon which plaintiff's claims are based, so it will be considered for the purpose of resolving both the Motion to Dismiss and the Motion for Summary Judgment.

[2] The AR is 331 pages, numbered 000001 through 000331.  The additional zeroes are omitted for convenience.  For example, page 330 is, in fact, page 000330.

[3] According to the PEB, "[r]atings of less than 30% for soldiers with less than 20 years active service require separation [from the Army] with severance pay in lieu of retirement." (A.R. 180).

The MEB also forwarded the following conditions to the PEB as "medically acceptable"[4]: (1) anxiety disorder, not otherwise specified ("NOS"); and (2) cognitive disorder, NOS. A.R. 3. The PEB adjudicated Plaintiff's "cognitive disorder, NOS," which encompassed the MEB-referred conditions of cognitive disorder, TBI, and post-traumatic headaches, as unfitting and rated 10% with likely application of the VA schedule for Rating Disabilities ("VASRD"). The PEB rated Plaintiff's anxiety disorder and ulnar nerve disorder as not unfitting. Id. On August 9, 2006, Plaintiff signed a form attached to the documents summarizing his PEB proceedings in which he checked a box stating, "I concur and waive a formal hearing of my case." A.R. 182. The Army honorably discharged Plaintiff in September 2006 with a combined 10% disability rating. A.R. 183.

On May 13, 2014, Plaintiff applied for a review by the Army Physical Disability Board of Review ("PDBR") of the rating awarded accompanying his medical separation from the armed forces. A.R. 8. He requested that the PDBR readjust his disability rating to over 30%, arguing that (1) he has no strength in his right hand, (2) his headaches "are bad," (3) his PDST was not fairly evaluated, (4) he has shrapnel in his body that was never found, and (5) his lungs "are damaged due to fumes inhaled while in Iraq." AR 3. On February 7, 2014, the PDBR concluded that "there was insufficient cause to recommend a change in the PEB fitness determination for the cognitive disorder condition or to rate the headache condition separately [or for the contended right hand condition] and so no additional disability rating [is] recommended." A.R. 5–6.

---

[4] "Medically acceptable" conditions will generally not result in a finding of being unfit by the PEB; in other words, such medical conditions do not ordinarily require medical discharge from the armed forces. See Arm. Reg. 40-501.

Plaintiff filed his Complaint on June 27, 2014, and requests that this Court require the ARBA review the PEB's decision because he was given an unfair disability rating.[5]  Id.  In response, Defendants filed the instant motion for dismissal and summary judgment.  In support of their motion, Defendants first argue that this matter should be dismissed for lack of subject-matter jurisdiction because (1) Plaintiff has not pled a waiver of sovereign immunity, (2) this case does not present a case or controversy because there has already been a review of the Army Physical Evaluation Board's decision, (3) Plaintiff's claim with regard to shrapnel must be dismissed due to failure to exhaust, and (4) to the extent that Plaintiff's claim may be construed as a Tucker Act claim, it should be dismissed for lack of jurisdiction because Tucker Act claims are reserved for the Court of Federal Claims.  Second, Defendants argue that dismissal under Rule 12(b)(6) is necessary because (1) Plaintiff's Complaint does not state a claim even in light of the liberal pleading standards extended to *pro se* litigants, (2) a review of the PEB's decision is barred by the APA's statute of limitations, and (3) Plaintiff waived review of the PEB's decision.  Finally, Defendants argue that, if the Court were to deny Defendants' motion to dismiss, summary judgment is appropriate because the PDBR's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

II.     **STANDARD OF REVIEW**

---

[5] Plaintiff appears to also assert negligence and medical malpractice causes of action in his brief in opposition. Pl.'s Br. at 20. However, "[w]hile *pro se* pleadings are liberally construed," "*pro se* litigants still must allege sufficient facts in their complaints to support a claim," Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013), and "[a] complaint is not amended by the arguments proffered in a brief in opposition to a motion to dismiss." Galligani v. N.Y. County Reg'l Police Dep't, 2011 U.S. Dist. LEXIS 97175 (citing Com. of Pa. *Ex Rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). Thus, a plaintiff cannot amend his complaint through arguments in his brief in opposition to a motion for summary judgment. *See* Bell v. City of Phil., 275 F. App'x. 157, 160 (3d Cir. 2008). Therefore, I will not consider Plaintiff's other alleged causes of action.

a.   12(b)(1)

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction is required for a district court to reach the merits of a claim, "'the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.'" S.B. ex rel. A.B. v. Trenton School Dist., No. 13-949, 2013 WL 6162814, at *3 (D.N.J. Nov. 25, 2013).

There is no presumption of truthfulness regarding allegations in the complaint when determining a challenge to the court's subject matter jurisdiction. Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Once a 12(b)(1) challenge is raised, the plaintiff has the burden of demonstrating the existence of subject matter jurisdiction. See McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006). A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Id. Under a factual attack, however, "the challenge is to the actual alleged jurisdictional facts." Liafom, LLC. v. Big Fresh Pictures, Civ. No. 10–0606, 2011 U.S. Dist. LEXIS 95251 (D.N.J. Aug. 24, 2011).

b.   12(b)(6)

Rule 12(b)(6) authorizes a defendant to move to dismiss a claim for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). In order to survive a 12(b)(6) motion, the complaint must allege "sufficient factual matter" to show that the claim is

facially plausible. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

"[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (quoting Schrob v. Catterson, 948 F.2d 1402, 1408 (3d Cir. 1991)). "In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion." McTernan, 577 F.3d at 526 (citation omitted).

c.   APA Review

Judicial review of an agency's final determination is governed by the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 et seq., rather than the typical summary judgment standard, and as a threshold matter, the Court's direct review is limited to the agency's final decision, which in this case is the PDBR's decision. *See* 5 U.S.C. § 704. However, once this Court reviews a final agency action, it may also review any intermediate action not otherwise directly reviewable. Id. ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review

on the review of the final agency action.").  Pursuant to Section 706(2), a reviewing court must

hold unlawful and set aside agency action, findings, and conclusions if they are found to be

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) contrary to constitutional right, power, privilege, or immunity;
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (4) without observance of procedure required by law;
> (5) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2).

Thus, under the APA, the function of the reviewing court is limited. A reviewing court

may not substitute its judgment for that of the agency.  Citizens to Preserve Overton Park v.

Volpe, 401 U.S. 402, 413–15 (1971), *overruled on other grounds*, Califano v. Sanders, 430 U.S.

99 (1977).  Rather, "the court's inquiry is limited to determining whether the agency 'considered

the relevant factors and articulated a rational connection between the facts found and the choice

made,' Balt. Gas & Elec. Co. v. Natural Res. Defense Counsel, Inc., 462 U.S. 87, 105 (1983),

and 'whether there has been a clear error of judgment.' Motor Vehicle Mfrs. Ass'n of U.S., Inc.

v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983)." Sierra Club v. U.S. Army Corps of

Eng'rs, No. 05-CV-1742, 2005 U.S. Dist. LEXIS 36385, 2005 WL 2090028 at * 8 (Aug. 29,

2005).  Moreover, "substantial deference is given to an agency's interpretation of statutes it

administers, and particularly to its own regulations, so long as the interpretation is a permissible

one." Id. (citations omitted).  The "arbitrary and capricious" inquiry amounts to a determination

of whether the administrative agency's decision was "without reason, unsupported by substantial

evidence, or erroneous as a matter of law." Doroshow v. Hartford Life and Acc. Ins. Co., 574

F.3d 230, 233 (3d Cir. 2009).  Substantial evidence requires more than a "mere scintilla" of

evidence. <u>Moskalski v. Bayer Corp.</u>, 2008 U.S. Dist. LEXIS 39970, at *4 n.3 (W.D. Pa. May 16, 2008).

    d.  <u>PDBR Framework</u>

Here, Plaintiff appears to request judicial review of the PDBR's decision reviewing the PEB determination of Plaintiff's disability rating. "The DoD [Department of Defense] established the PDBR in 2008 . . . to 'reassess the accuracy and fairness of the combined disability ratings assigned [s]ervice members who were discharged as unfit for continued military service by the Military Departments with a combined disability rating of 20 percent or less and were not found to be eligible for retirement.'" <u>Silbaugh v. United States</u>, 107 Fed. Cl. 143, 147 (2012) (quoting 10 U.S.C. § 1554a). "The PDBR is not identical to a military correction board. Congress created the PDBR to review and correct DoD disability ratings only for certain individuals discharged between September 11, 2001 and December 31, 2009." <u>Silbaugh</u>, 107 Fed. Cl. at 147 (quoting DODI 6040.44 ¶ 4.a).

> DODI 6040.44, which provides instructions for PDBR operation and management, instructs the PDBR to review the disability ratings of covered individuals in accordance with the Veterans Affairs Schedule for Rating Disabilities ("VASRD") in effect at the time the covered individual separated from the military. In arriving at its recommendations, the PDBR also shall use all applicable statutes and any directives in effect at the time of the separation, to the extent those statutes and directives to do not conflict with the VASRD. If the DVA [Department of Veteran's Affairs] has provided a disability rating for a covered individual, the PDBR "should compare any DVA disability rating for the specifically military unfitting condition(s) with the PEB combined disability rating and consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the DVA rating was awarded within 12 months of the Service member's separation."
>
> For each case before the PDBR, the PDBR shall review the complete case record that was the basis for the PEB rating determination and shall, to the extent feasible, collect all the information necessary for competent review and recommendation. DODI 6040.44 instructs the PDBR to impartially readjudicate cases upon which review is requested or undertaken on its own motion and to offer fair and equitable determinations pertaining to the assignment of disability

ratings. The PDBR also is authorized to change a previous "fit" determination to "unfit."

Silbaugh, 107 Fed. Cl. at 147 (internal citations and quotation marks omitted).

### III.   ANALYSIS

I first examine Defendants' arguments regarding their motion to dismiss for lack of subject matter jurisdiction, then consider their motion to dismiss for failure to state a claim, and finally consider their summary judgment motion.

a.   12(b)(1)

First, Defendants argue that Plaintiff must establish either a grant of jurisdiction or a waiver of sovereign immunity in his Complaint, and because he does not do so, his claim facially lacks subjectmatter jurisdiction.  Def.'s Mot. in Supp. at 16.  Defendants cite United States v. Testan, where the Supreme Court held that a waiver of sovereign immunity must be unequivocally expressed.  424 U.S. 392, 399 (1976); Def.'s Mot. in Supp. at 17.  Relying on Testan, Defendants assert that Plaintiff must explicitly plead the waiver of sovereign immunity to establish subject matter jurisdiction over his claims.  Id.  Plaintiff, for his part, has not explicitly stated that he seeks relief under a statute that waives sovereign immunity, but he has requested that ARBA review his decision and clarified in his Memorandum in Opposition that he believes the PEB's decision was arbitrary, capricious, and unsupported by medical evidence, which could amount to a claim under the APA.  Pl.'s Compl. at 1.

*Pro se* pleadings are to be liberally construed, Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013), and Testan does not support Defendants' claim that Plaintiff must explicitly plead a waiver of sovereign immunity.  In Testan, the Court discussed whether the *government's waiver* of sovereign immunity could be implied, not whether a court may imply a waiver of sovereign immunity into a complaint.  424 U.S. at 399.  Indeed, in the case of *pro se*

plaintiffs, courts should be "willing to apply the relevant legal principle even when the complaint has failed to name it." Mala, 704 F.3d at 244. For example, in Brant v. United States, the court construed a request for a revocation hearing as an order dismissing revocation and lifting a detainer for a supervised release violation. 2015 U.S. Dist. LEXIS 50292, at *1 (D.N.J. April 15, 2015). Though Plaintiff has not explicitly said that he is suing under a statute that waives sovereign immunity, his Complaint clearly seeks either monetary compensation for an allegedly incorrect evaluation by the PDBR or a review of the PDBR's decision, Pl.'s Compl. at 1, and those forms of relief can be pursued under the Little Tucker Act or the APA, respectively. Plaintiff has failed to name the principle on which jurisdiction lies, but regardless, this court will apply it. Therefore, Defendants' facial challenge to this Court's subject matter jurisdiction based on Plaintiff's failure to plead sovereign immunity fails.

Second, Defendants argue that because Plaintiff's claim does not present a case or controversy, it must be dismissed for lack of subject matter jurisdiction. Def.'s Mot. in Supp. at 18. Defendants point to Plaintiff's request for a review of his PEB decision by ARBA and argue that since the PDBR has already reviewed the PEB's decision, Plaintiff's requested remedy has already been accomplished. Id. at 18-19. Article III's case-or-controversy requirement dictates that three elements must be met in order for the Plaintiff to bring suit in federal court: 1) the litigant must be injured or threatened with injury, 2) the injury must be fairly traceable to the actions of the defendant, and 3) there must be a likelihood that the injury will be redressed by a favorable decision. Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir. 2009). Defendants' argument attacks the third requirement by claiming that Plaintiff's injury has already been addressed. But Plaintiff's Memorandum in Opposition reveals that he does not, in fact, want ARBA review in particular but rather seeks review of the PDBR board's decision in whatever

way might be available.  This can be inferred both from his many references to what the court

can do to resolve his request, see Mem. in Opp. at 7–10, as well as his argument that he was not

fairly retired. See Pl.'s Compl.

Because *pro se* pleadings are liberally construed, Mala, 704 F.3d at 245, the Court should

apply the relevant legal principle even when the Plaintiff is unaware of it.  Id. at 244.  Based on a

fair reading of Plaintiff's Complaint, it appears that Plaintiff was unaware that this Court could

itself engage in direct review under appropriate circumstances.  Thus, I will construe Plaintiff's

request for ARBA review as a request for relief under the applicable statutes, as discussed *infra*.

Because I construe Plaintiff's requests liberally, I will not dismiss his claim for failure to present

a case or controversy.

Third, Defendants argue that Plaintiff has not exhausted his administrative options, so

pursuant to 5 U.S.C. § 704 (2012), the Court lacks subject matter jurisdiction.  Specifically,

Defendants claim that because the PEB did not determine whether Plaintiff had shrapnel injuries,

Plaintiff cannot seek review of that evaluation.  Plaintiff does not respond to this contention, but

generally argues that he is suffering from shrapnel wounds.

5 U.S.C. § 704 states that a final agency action for which there is no other adequate

remedy in court is subject to judicial review.  Here, Plaintiff's claim of shrapnel injuries was not

presented to the PEB, presumably because they were not discovered at the time. A.R. 179–181.

While Plaintiff raised his shrapnel injuries at the PDBR level, the PDBR noted that its scope of

review was "limited to those conditions determined by the PEB to be unfitting for continued

military service and those conditions identified but not determined to be unfitting by the PEB

when specifically requested by the [claimant.]" A.R. 3. Because the PEB and the PDBR have

both not acted upon Plaintiff's shrapnel claim because he did not raise it at the PEB level, there

11

has been no final agency action on Plaintiff's shrapnel claim.  Scarseth v. United States, 52 Fed. Cl. 458, 478 (Fed. Cl. 2002) (before Court has jurisdiction over claim for disability retirement, plaintiff must seek relief from competent board); Cook v. United States, 32 Fed. Cl. 783, 786 n.4 (Fed. Cl. 1995) (claim for disability does not begin to run until a retirement board has acted or declined to act).  Further, because Plaintiff has not raised his shrapnel claim before a military review board, there has not been a final agency action with regard to the shrapnel claim, so this Court has nothing to review.[6]  Therefore, to the extent that Plaintiff seeks review of his shrapnel claim, this court lacks subject-matter jurisdiction, and such a request must be dismissed on this basis.

Fourth, Defendants argue that to the extent that Plaintiff's claims may be interpreted as monetary in nature, this Court lacks jurisdiction over his claims. Specifically, Defendants argue that Plaintiff's monetary claims are to be resolved under the Tucker Act, 28 U.S.C. § 1491 (2012). Plaintiff's claim is not subject to judicial review under the APA because § 704 divests a District Court of APA-based jurisdiction if there is another adequate remedy available to the Plaintiff and the Tucker Act provides "other adequate remedy in court" available to Plaintiff.  5 U.S.C. § 704; Def.'s Mot. in Supp. at 20.  Since Tucker Act claims may only be brought in the Court of Federal Claims ("CFC"), Defendants argue that this Court would consequently lack jurisdiction over Plaintiff's claim.  § 1491(a)(1). See Lechliter v. Rumsfeld, 2004 U.S. Dist. LEXIS 17968, at *11 (D. Del. Aug. 25, 2004) (citing Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("This limitation has been interpreted to preclude review under the APA when a

---

[6] As the PDBR's report notes in its Scope of Review section, A.R. 3, Plaintiff may seek consideration of conditions and contentions outside of its scope of review from the Board for Correction of Military Records.

plaintiff has an adequate remedy by suit under the Tucker Act.")).  Plaintiff does not respond to this argument.

If Plaintiff's claim is monetary in nature, then it could form the basis of a Tucker Act claim.  A Tucker Act claim is a non-tort claim against the government for more than $10,000.  28 U.S.C. § 1491(a)(1).  Tucker Act claims must be founded on money-mandating sources of law.  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach . . . of the Tucker Act, a plaintiff must identify a separate source of substantive law . . . creat[ing] the right to money damages.").  The CFC may award compensatory pay for improperly determined disability status under 10 U.S.C. § 1201, entitled "Regulars and members on active duty for more than 30 days: retirement," which courts have determined is a money-mandating statute.  See Grooms v. United States, 113 Fed. Cl. 651, 659-660 (Fed. Cl. 2014) (citing Sawyer v. United States, 930 F.2d 1577, 1580-81 (Fed. Cir. 1991)).  Thus, the CFC would be able to provide anything that this Court can provide under APA review, so the CFC would be able to afford an adequate remedy to Plaintiff.  See Int'l Eng'g Co., Inc. v. Richardson, 512 F.2d 573, 581 (D.C. Cir. 1975) ("[T]he availability of a remedy in the Court of Claims is . . . an adequate remedy.").  Thus, if the Plaintiff is making a monetary claim for more than $10,000, this Court lacks jurisdiction, and Plaintiff must bring his claim in the CFC.[7]  Therefore, to the extent that Plaintiff has brought a Tucker Act claim, this Court dismisses that claim.

---

[7] Further, Defendants argue that the statute of limitations on Plaintiff's Tucker Act claim has run, so Plaintiff cannot bring his claim in the CFC.  Def.'s Mot. in Supp. at 22.  Plaintiff does not respond to this argument.  See generally Pl.'s Opp. Br.  The Court need not reach this argument, because it lacks jurisdiction to decide whether the statute of limitations on Plaintiff's Tucker Act claim has run.  Absent jurisdiction, it is well-settled that the Court is without authority to address the parties' remaining merit-based arguments. See Adams v. Ford Motor Co., 653 F.3d 299, 304

However, there are two other jurisdictional bases upon which Plaintiff's request may proceed. First, Plaintiff's Complaint clearly seeks a review of his disability rating when he requests that someone "look into [his] case." Pl.'s Compl. at 1. Because a review of an administrative decision is properly brought under the APA, the APA is the "relevant legal principle" for this request, see Mala 704 F.3d at 244, and Plaintiff's Complaint may be reasonably construed as an APA request, which the Court may review.

Second, because Plaintiff has a non-tortious claim against the United States for money owed to him if his disability rating is inaccurate, he can be reasonably construed as requesting Little Tucker Act relief as well. A Little Tucker Act claim is a non-tort claim against the government for damages of less than $10,000.[8] 28 U.S.C. § 1346(a)(2). Unlike the Tucker Act,

---

(3d Cir.2010) ("[i]f plaintiffs do not possess Article III standing, both the District Court and this Court lack subject matter jurisdiction to address the merits of plaintiff's case.").

[8] The Little Tucker Act provides that the district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, for

> civil action[s] or claim[s] against the United States, not exceeding $ 10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . ."

28 U.S.C. § 1346(a)(2). The Little Tucker Act does not create any substantive right that may be enforced against the government, Cnty. of Monmouth v. Fed. Emergency Mgmt. Agency, 2009 U.S. Dist. LEXIS 87953, at *18 (D.N.J. Sep. 24, 2009) (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)), and a party claiming jurisdiction under the Little Tucker Act must have an independent substantive right to relief. Id. In the case of claims against the Army for improperly determined disability status, the independent substantive right to relief is 10 U.S.C. § 1201 et seq. Grooms v. United States, 113 Fed. Cl. 651, 659–60 (Fed. Cl. 2014) (citing Sawyer v. United States, 930 F.2d 1577, 1580–81 (Fed. Cir. 1991)).

To the extent that the Plaintiff's claim may be construed as a claim under the Little Tucker Act, the standard of review is the same as if it were an APA case. Grooms, 113 Fed. Cl. at 660 (The Tucker Act standard in the context of disability retirement benefits dispute "is the same as the standard of review defined by the Administrative Procedure Act . . . ."). Accordingly, this court should not make independent factual assessments of medical evaluations or determine whether the PDBR came to the "correct" conclusion. Walls v. United States, 582

"[t]he Little Tucker Act confers concurrent jurisdiction over certain claims against the United States on both the district courts and the United States Court of Federal Claims." *Jarrett v. White*, 57 F. App'x 87, 88 (3d Cir. 2003) (citing 28 U.S.C. § 1346(a)(2)). Thus, I will construe Plaintiff's claim as also arising under the Little Tucker Act.[9] Therefore, to the extent that Plaintiff's claim arises under the APA and the Little Tucker Act, his claim will not be dismissed for lack of subject matter jurisdiction.

b. <u>12(b)(6)</u>

Next, Defendants move to dismiss Plaintiff's Complaint for failure to state a claim. First, Defendants argue in support of their motion to dismiss that Plaintiff has not asserted enough in his Complaint for Defendants to understand what is at issue in the lawsuit, and thus has failed to state a claim. Def.'s Mot. in Supp. at 17–18. As mentioned above, though a *pro se* plaintiff's pleadings will be liberally construed, he or she must nevertheless allege sufficient facts in his or her complaint to support a claim. <u>Mala</u>, 704 F.3d at 245. Here, Plaintiff's Complaint states that (1) he was "not fairly retired from the army" and (2) the PEB did not include PTSD in his discharge. Pl.'s Compl. at 1. An APA claim challenges an agency's action on the grounds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). Under the liberal pleading standards afforded to *pro se* plaintiffs, Plaintiff's

_____

F.3d 1358, 1367 (Fed. Cir. 2009). Rather, the court's role is limited to determining whether the agency's final action was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." <u>Fisher v. United States</u>, 402 F.3d 1167, 1180 (Fed. Cir. 2005); *see also* <u>Chambers v. United States</u>, 417 F.3d 1218, 1227 (Fed. Cir. 2005).

[9] Defendants argue that because Plaintiff has not waived any relief greater than $10,000, the Little Tucker Act does not apply. Defs.' Mem. In Supp. At 21. Indeed, a review of Plaintiff's Complaint does reveal that Plaintiff has not specifically requested monetary relief in any amount. See Compl. However, because the Little Tucker Act is a "relevant principle" for the claim that Plaintiff is pursuing in his Complaint, this Court will liberally construe Plaintiff's claim as brought, in the alternative, under the Little Tucker Act.

claim that he was not fairly retired can be interpreted as a claim that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and because Plaintiff alleged that the agency unfairly did not include his PTSD in his discharge, he has alleged a sufficient factual basis to support his claim. Thus, Plaintiff's Complaint will not be dismissed under Rule 12(b)(6) for lacking sufficient factual support.

Second, Defendants argue that the statute of limitations has run on Plaintiff's request for APA review of the PEB's decision and that Plaintiff waived review of the PEB determination. Def's Mot. in Supp. at 23.  The statute of limitations for APA claims is six years, 28 U.S.C. § 2401 (2012); Dep't of Pub. Welfare v. Dep't of Health and Human Servs., 101 F.3d 939, 944 (3d Cir. 1996).  Here, to the extent that Plaintiff asserts an APA review claim, such a claim accrued upon the issuance of PDBR's decision, the final order in his administrative case, on February 7, 2014.  Because Plaintiff filed this Complaint in June 27, 2014, well within the six-year time period, his APA review claim is not time-barred.  Because Plaintiff's PDBR review claim is not barred and the PDBR reviewed the PEB's determination, this court may ordinarily indirectly review the PEB's determination.[10]  However, the administrative record shows that on August 9, 2006, Plaintiff signed a form attached to the documents summarizing his PEB proceedings in which he checked a box stating, "I concur and waive a formal hearing of my case[,]" *see* A.R. 182, and Plaintiff does not argue that he did so unwillingly or involuntarily.  Courts have found that knowingly and voluntarily concurring with the PEB's informal decision and waiving a formal PEB hearing constitutes a waiver of judicial review with respect to the PEB.  Watson v.

---

[10] The APA gives a federal court jurisdiction over final agency actions.  See 5 U.S.C.A. § 704. When a federal court has jurisdiction over an agency's action, it has jurisdiction over any preliminary, procedural, or intermediate agency actions, even if they are not directly reviewable. See id. ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action).

United States, 113 Fed. Cl. 615, 632 (Fed. Cl. 2013); Gant v. United States, 417 F.3d 1328, 1331

(Fed. Cir. 2005), *cert. denied*, 546 U.S. 1043 (2005).  Thus, based upon Plaintiff's failure to

contest the conditions under which he signed the concurrence and waiver, the Court concludes

that Plaintiff knowingly and voluntarily concurred with the PEB's findings and waived his right

to a formal hearing or judicial review of the PEB's informal decision. Accordingly, to the extent

that his Complaint may be construed as a request for review of the PEB's decision, it is

dismissed.

Therefore, Plaintiff's claims are dismissed to the extent that they are premised upon the

Tucker Act and upon APA review of the PEB's decision. However, Plaintiff's claims survive

dismissal to the extent they seek APA review of the PDBR's decision and monetary relief under

the Little Tucker Act.[11]

c.  Summary Judgment

Finally, Defendants argue that they are entitled to a summary judgment on any of

Plaintiff's claims that survive because Plaintiff cannot demonstrate that the PDBR's decision

denying a change in his disability rating was arbitrary, capricious, an abuse of discretion, or

otherwise contrary to law.  Def.'s Mot. in Supp. at 22-28.  As noted *supra*, regardless of whether

---

[11] In Silbaugh, the Court of Federal Claims decided that a plaintiff could seek judicial review of
the PDBR's decision reviewing the PEB determination even when she had signed a form
waiving her right to appeal her informal PEB decision and a formal PEB hearing because "[t]he
PDBR reviewed plaintiff's case *de novo*," Silbaugh, 107 Fed. Cl. at 147, consistent with the
applicable DOD instructions to "impartially readjudicate cases upon which review is requested
or undertaken on its own motion." DODI 6040.44. That court noted that despite Defendants'
arguments attempting to limit the scope of the court's judicial review, "the fact remains that the
PDBR, consistent with its mandate, reached its decision in this case by assessing and comparing
the various medical determinations in plaintiff's medical records." Silbaugh, 107 Fed. Cl. at 147.
This Court finds the reasoning in Silbaugh to be persuasive and will accordingly review the
PDBR's decision "in light of the record that the PDBR evaluated." Id.; cf. Watson v. U.S., 113
Fed. Cl. 615, 632 (Ct. Cl. 2013).

17

Plaintiff's claim is construed as a Little Tucker Act claim or a request for review under the APA, the standard is the same: whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

The PDBR found as follows:

> The Board did not surmise from the record or PEB ruling in this case that any prerogatives outside the VASRD were exercised. In the matter of the cognitive disorder condition and IAW VASRD § 4.124a,[12] the Board unanimously recommends no change in the PEB adjudication. In the matter of the contended MH [mental health] and right hand conditions, the Board unanimously agrees that it cannot recommend either for disability rating. There were no other conditions within the Board's scope of review for consideration.

A.R. 6. The Board therefore recommended "that there be no characterization of the CI's disability and separation consideration." Id.

The PDBR's task is to "reassess the accuracy and fairness of the combined disability ratings" of the decisions of lower boards based on a "fair and equitable" standard. DoDI 6040.44, Encl. 3 ¶¶ 1, 4.   In doing so, the PDBR's decision must consider the relevant factors and articulate a rational connection between those factors and its decision regarding the fairness and accuracy of the PEB's decision.  Balt. Gas & Elec. Co., 462 U.S. at 105; Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 43.

The relevant factors considered in determining the fairness and accuracy of the PEB's decision are (1) an evaluation of the PEB's record of findings and combined disability rating decisions regarding the specific condition making the veteran unfit for military service, DoDI 6040.44 Encl. 3 ¶ 3.d; (2) an evaluation of any VA disability ratings issued on behalf of the former service member, especially those issued within twelve months of separation, id. at Encl. 3 ¶ 4.a.(5); (3) a comparison of the PEB and VA's decisions, id. at Encl. 3 ¶ 4.a.(5)(a)-(b); and (4)

---

[12] VASRD § 4.124a is entitled, "Schedule of ratings—neurological conditions and convulsive disorders."

a review of the disability ratings of the covered individual in accordance with the Veterans Affairs Schedule for Rating Disabilities ("VASRD") in effect at the time of separation, restricted to those medical conditions identified by the PEB, both those found to be unfitting and not unfitting.  Id. at Encl. ¶ 4.f.

First, the PDBR evaluated the PEB's record of findings regarding the unspecified cognitive disorder that resulted in Plaintiff's medical discharge with a 10% disability rating.  The Board found that the MEB neurological narrative summary ("NARSUM"), a summary of the history and severity of the service member's medical condition, described Plaintiff as suffering from mild cognitive difficulties as a result of his traumatic brain injury ("TBI").  A.R. 4.  These difficulties include a mild impairment in attention and memory, headaches every two to three days, mild distractability, irritability, flashbacks, initial insomnia, frequently disrupted sleep, daytime sleepiness, depressed mood, and some avoidance behavior.  Id.  VASRD § 4.124a, the "[s]chedule of ratings for neurological conditions and convulsive disorders," ranks levels of impairment in a number of areas, including memory, judgment, social interaction, orientation, motor activity, visual spatial orientation, subjective symptoms, neurobehavioral effects, communication, and consciousness, on a scale of 0–3, with a further evaluative level of "total" if the symptom causes complete incapacity.  Id. at 3–9. The regulation states that the appropriate evaluation of disability for residual effects of TBI is to assign a percentage ranking corresponding to the numerical value given to the highest area of impairment.[13] Id. at § 4.124-4.

Plaintiff was evaluated with persistent moderate impairment in sustained attention in August and November 2005, corresponding to a level of impairment of 3, in theory qualifying

---

[13] For an assignment of 0, no percentage disability is assigned. For an assignment of 1, ten percent disability is assigned. For an assignment of 2, forty percent disability is assigned. For an assignment of 3, seventy percent disability is assigned. An assignment of "total" qualifies the veteran for one hundred percent disability. Id. at § 4.124-4.

Plaintiff for a seventy percent disability rating.  A.R. 5; VASRD § 4.124-6.  However, the PDBR

is charged with determining disability and fitness at the time of separation, which, here, was in

September 2006.  DoDI 6040.44 Encl. 3.  Because Plaintiff was "noted to be improving" and on

the "expected clinical course for a mild TBI[,]" and because the VA Compensation and Pension

examination performed a month after Plaintiff's separation found "no cognitive impairment," the

PDBR found that the PEB had correctly evaluated Plaintiff's cognitive disorder at the time of

separation to qualify him for only ten percent disability.  Because the Plaintiff was noted to be

improving, the PEB could have reasonably expected his moderate impairment to be reduced to

the level of mild impairment that would have qualified Plaintiff for ten percent disability.

Furthermore, because the VA evaluated Plaintiff as having no cognitive disorder just one month

after Plaintiff was separated, Plaintiff's course of improvement met the PEB's expectations.  The

PDBR's decision was justified because the expected clinical course for Plaintiff's mild TBI

suggested that he would continue to improve. Thus, the decision is rational and considers the

relevant factors.  See, e.g., Jardon v. United States, 2013 U.S. Claims LEXIS 118, at *59–60

(Fed. Cl. Feb. 14, 2013) (Where "the . . . PDBR examine[s] the evidence before [it] and

articulate[s] the reasoning behind the MEB's and PEB's determinations . . . as well as the

reasoning behind [its] own findings" the board has "examine[d] the relevant data and

articulate[d] a satisfactory explanation . . . ."); Pearl, 111 Fed. Cl. at 312 (The PDBR's decision

based on administrative record was "clearly rational[,]" and courts are "in no position to dispute

this line of reasoning.").

Second, the PDBR considered Plaintiff's "contended PEB conditions," specifically his

mental health and right hand conditions.  A.R. 5.  First, the Board "considered if there was an

unfitting [mental health] diagnosis at separation, regardless of whether it was diagnosed as

anxiety disorder or PTSD." Id.  The PDBR noted that the MEB psychiatrist evaluating Plaintiff five months prior to separation found Plaintiff to have anxiety and cognitive disorders, but with only mild military, social, and occupational impairment such that Plaintiff was medically acceptable.  A.R. 180.  The PEB similarly did not find the anxiety disorder unfitting.  A.R. 6. Army Reg. 40-501 ¶ 3-33 states that anxiety disorder can be a cause for referral to an MEB where the symptoms are sufficient to require extended or recurrent hospitalization, necessitate limitations of duty, or interfere with effective military performance. Id. But "[t]hese retention standards and guidelines should not be interpreted to mean that possessing one or more of the listed conditions signifies automatic disability retirement . . . ."  Army Reg. 635-40 ¶ 3-1(a), and "the mere presence of an impairment does not, of itself, justify a finding of unfitness." Id.  The PDBR evaluated whether the MEB and PEB considered Plaintiff's anxiety disorder to be unfitting for continued military service, and though the MEB acknowledged that Plaintiff suffered mild military impairment, mild impairment is not necessarily unfitting. Thus, the PDBR, as well as the MEB and PEB, decided that the impairment was not unfitting.  Where the PDBR examines the evidence before it, articulates the reasoning behind the PEB and MEB's determinations, and explains its own findings, this Court will not find its decision arbitrary and capricious absent a showing of clear error of judgment, lacking here.[14]  See, e.g., Jardon, 2013 U.S. Claims LEXIS 118, at *59-60; Pearl, 111 Fed. Cl. at 312.

---

[14] Plaintiff argues in his opposition brief that the VA evaluated Plaintiff at 50% disability.  Pl.'s Mem. in Opp. at 19-20.  However, as Defendants note, "the PEB/PDBR and the VA have different mandates." Defs.' Mem. In Supp. at 27. The PEB and PDBR examine whether a service member is able to perform his duties in the Army. The VA, on the other hand, determines the earning capacity for a veteran in a civil occupation, and, unlike the PEB and PDBR ratings, those ratings may change over time "in accordance with changes in laws, medical knowledge, and [the claimant's] physical or mental condition." 38 C.F.R. §4.1.

Finally, the PDBR considered Plaintiff's argument that his right hand condition should have been deemed unfitting. The Board noted that "there was no performance-based evidence in the record that the hand condition significantly interfered with satisfactory duty performance," and the Court's own review of the administrative record confirms this fact. Accordingly, the PDBR's finding that there was insufficient cause to recommend a change in the PEB fitness determination for the contended right hand condition was also not arbitrary, capricious, or otherwise not in accordance with the law. See, e.g., Jardon, 2013 U.S. Claims LEXIS 118, at *59–60; Pearl, 111 Fed. Cl. at 312.

Therefore, Plaintiff has failed to meet his burden of proving by a preponderance of the evidence that the PDBR's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law.  See Jardon, 2013 U.S. Claims LEXIS 118, at *60–61.  As such, summary judgment is granted in favor of the Defendants.

## **CONCLUSION**

For the above reasons, Defendants' motion to dismiss for lack of subject-matter jurisdiction is granted in part, as to any claims by Plaintiff (1) under the Tucker Act or (2) that Defendants did not evaluate his shrapnel injuries, and denied in part, as to any claims by Plaintiff (1) under the Little Tucker Act and (2) for judicial review under the Administrative Procedure Act for the injuries that Defendants did evaluate. Further, Defendants' motion to dismiss for failure to state a claim is granted in part, as to Plaintiff's request for review of the Army Physical Evaluation Board's determination, and denied in part, as to any claim by Plaintiff (1) under the Littler Tucker Act and (2) for APA review of the Army Physical Disability Review Board ("PDBR") decision. Finally, Defendants' motion for summary judgment on the claims that survive dismissal is granted.

22

An appropriate order will follow.

Dated: July 27, 2015                    /s The Honorable Freda L. Wolfson
                                        United States District Judge